**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD NASH and THADDEUS THOMAS, | : : : : |
| Plaintiffs, | : Civil Action Nos. 10-2113 & 10-5026 (ES) : |
| v. | : MEMORANDUM OPINION : |
| GARY LANIGAN, et al., | : : |
| Defendants. | : : |

**SALAS, DISTRICT JUDGE**

It appearing that:

1. This matter is before the Court upon Defendants Elizabeth Connolly, John Main, Jonathan Poag, Jennifer Velez, Valerie Mielke, Shantay Adams, Jackie Ottino and Gary Lanigan's (collectively, "Defendants") respective Motions to Dismiss Plaintiffs Ronald Nash and Thaddeus Thomas's ("Plaintiffs") Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. Nos. 54, 55, Defendants' Motions to Dismiss).[1] Plaintiffs filed Opposition (D.E. No. 59) and Defendants Connolly, Main, Poag, Velez, Mielke, Adams and Ottino filed a Reply (D.E. No. 60).

2. This case has a lengthy history, with which the parties are familiar, and the Court will not recount it at length here. Suffice it to say, this case involves challenges to the transfer of civilly committed sexually violent predators ("SVPs") confined under the New Jersey Sexually Violent Predator Act ("NJSVPA"), N.J. Stat. Ann.§ 30:4-27.24, from a facility in Kearny, New

---

[1] The Second Amended Complaint, Motions to Dismiss and responsive briefing in both cases are identical. For the sake of efficiency, the Court will only provide the relevant docket citations to Mr. Nash's case.

Jersey to the Special Treatment Unit ("STU") of the East Jersey State Prison ("EJSP"). Plaintiffs, both SVPs, filed complaints challenging this transfer and the resulting changes to their treatment, as well as various other issues. In 2014, the Hon. Dickinson R. Debevoise, U.S.D.J., to whom these cases were originally assigned, entered an opinion and order granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). (D.E. Nos. 35, 36, October 20, 2014 Opinion and Order).

3. In his October 20th Opinion, Judge Debevoise dismissed "all Plaintiffs' claims asserting overall insufficiency of the mental treatment provided to all civilly committed sexually violent predators confined at the Special Treatment Unit of the East Jersey State Prison" with prejudice. (*Id.*). He dismissed all claims against then Attorney General Paula T. Dow with prejudice and the claims against Governor Chris Christie without prejudice. (*Id.*). He also dismissed "Plaintiffs' claims asserting that Plaintiffs' mental treatment at the Special Treatment Unit of the East Jersey State Prison is/was administered by social workers and/or recreation staff, rather than by psychiatrists/psychologists" without prejudice. (*Id.*). Lastly, Judge Debevoise denied Defendants' motion "as to Plaintiffs' claims against Defendants Gary M. Lanigan, Jennifer Velez, John Main, Jonathan Poag, Merrill Main, Shantay Braim Adams and Jackie Ottino to the extent Plaintiffs assert that these Defendants made systemwide decisions that produced the operational regime within at the Special Treatment Unit of the East Jersey State Prison, which caused the subordinate officers to deny and/or reduce and/or change Plaintiffs' prescribed mental treatment for non-medical reasons." (*Id.*).

4. Defendants Lanigan, Velez, Main, Poag, Main, Adams, and Ottino filed an appeal, challenging the district court's denial of qualified immunity. (D.E. No. 37). The Third Circuit

2

affirmed Judge Debevoise's decision, finding that the District Court properly denied qualified immunity. *Thomas v. Christie*, 655 F. App'x 82 (3d Cir. 2016). Specifically, the court stated that:

> Thomas and Nash have pleaded that each official's "own decisions and acts" causally connected Appellants to the reduction or elimination of prescribed treatment. Towards this end, they state each Appellant's job title within the Department of Corrections and Department of Human Services, and they specify the particular types of policy decision and rulemaking responsibilities each had that was relevant to the housing and care of Thomas and Nash. Moreover, the pleadings focus upon disruptions in treatment occurring after Thomas and Nash were transferred from the Kearney facility to the East Jersey State Prison, inextricably intertwining the constitutional violation claims about treatment disruptions with policy decisions concerning the transfer.
>
> The District Court's review of the complaints highlights the rather unique alignment between the specific right at issue and the particular decision-making responsibilities of each Appellant that enabled it to reach a conclusion about whether the right was clearly established. The District Court noted that Thomas and Nash were pleading that a subset of the decisions these officials made were at issue—those related to the movement of the sexually violent predator program from Kearney to East Jersey State Prison. It said "the decisions and acts at issue, by their very nature, could not have possibly escaped the scope of the DOC defendants' personal responsibilities." Given the alignment between the distinct scope of decisions at issue and Appellants' job responsibilities, this is a reasonable inference.

*Id.* at 85–86 (3d Cir. 2016) (citations to the record omitted). The Court of Appeals further agreed with the district court's determination that the vested liberty interest at issue was "well defined" and found that it was "reasonable for the District Court to conclude that Appellants had 'fair warning' of the constitutional implications of any decision foreseeably resulting in 'denying, reducing or changing Plaintiffs' prescribed mental treatment for non-medical reasons.'" *Id.* at 86.

5. Upon return to the district court, this matter was reassigned to the Undersigned. (D.E.

3

No. 45). The Hon. Michael A. Hammer, U.S.M.J., allowed Plaintiffs to file a second amended complaint (D.E. No. 46) and, on March 8, 2017, Plaintiffs filed the Second Amended Complaint (D.E. No. 49, Second Amended Complaint ("SAC")).

6. Defendants thereafter filed separate Motions to Dismiss. (D.E. Nos. 54, 55). In their Motion to Dismiss, Defendants Connolly, Main, Poag, Velez, Mielke, Adams and Ottino, who are current or former Department of Human Services employees, argue that the SAC fails to state a claim against them and must be dismissed. Specifically, Defendants Connolly, J. Main, Poag, and Velez argue that because they are sued in their capacity as policy-makers, and because the "Second Amended Complaint acknowledges that [the decision to transfer the STU from Kearny to East Jersey State Prison] was made by DOC, rather than DHS Defendants," Plaintiffs fail to state a claim against them. (D.E. No. 54-1, DHS Defendants' Brief in Support of Motion to Dismiss ("DHS Br.") 7). Defendants Connolly, J. Main, Poag, and Velez further argue that the SAC does not allege that they were involved in any treatment decisions for Plaintiffs and therefore that claim must also be dismissed against them. (*Id.*).

7. The Court will deny Defendants' Motion.[2] As stated by the Plaintiffs in Opposition, the SAC essentially re-states the facts alleged in the FAC, which has already been determined to sufficiently state a claim by both Judge Debevoise and the Third Circuit. Defendants Connolly,

---

[2] To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

J. Main, Poag, and Velez argue that the inclusion of certain additional facts in the SAC make it clear that the Department of Corrections was responsible for the transfer, not DHS.  However, the inclusion of facts from the state court's opinion in *County of Hudson v. State Department of Corrections*, No. A-2552-07T1, 2009 WL 1361546 (N.J. Super. Ct. App. Div. May 18, 2009), which lays out the history leading to the decision to move the SVPs to EJSP, does not change the overall allegations against the Defendants.  Looking at the facts as a whole, the SAC, as did the FAC, alleges that all Defendants were in some way involved in the transfer and resulting reduction in prescribed treatment.  (*See* Oct. 20th Opinion, n. 34) ("The parties' focus on Defendants' decision to *transfer* the SVPs, not on the changes in Plaintiffs' *prescribed* medical care is unfortunate") (emphasis in original).  Judge Debevoise found the allegations sufficient and this Court does not find that the additional facts alter his conclusions.

8. Similarly, Defendants Connolly, J. Main, Poag, and Velez's argument that the SAC does not allege that they played any role in the treatment decisions for Plaintiffs is also without merit.  The descriptions of the roles of these Defendants in the SAC is nearly identical to ones contained in the FAC.  (SAC ¶¶ 8; 9; 14; 15; FAC ¶¶ 11-13).  As stated above, the Third Circuit referred to these descriptions when affirming Judge Debevoise.  *See Thomas*, 655 F. App'x at 85–86 ("Towards this end, they state each Appellant's job title within the Department of Corrections and Department of Human Services, and they specify the particular types of policy decision and rulemaking responsibilities each had that was relevant to the housing and care of Thomas and Nash").  Because the District Court and Third Circuit have previously found that Plaintiffs adequately pled that each of these Defendants' own actions causally connected them to the reduction or elimination of prescribed treatment, and those facts have remained virtually identical

5

in the SAC, the Court will deny Defendants Connolly, J. Main, Poag, and Velez's motion on this ground.

9. In their portion of the DHS Defendants' Motion to Dismiss, Defendants Mielke, Adams and Ottino argue that there is only one factual allegation against them and it does not state a constitutional violation.[3] However, there were also no specific allegations against these Defendants in the FAC, yet, as discussed at length above, Judge Debevoise concluded that looking at the allegations as a whole, and the roles of each of these Defendants, Plaintiffs had stated a claim based on treatment changes arising out of the transfer. There is nothing alleged in the SAC that would compel this Court to disturb those conclusions.[4]

10. In a separate Motion to Dismiss, Defendant Lanigan argues that the SAC fails to state a claim against him. (D.E. No. 55, Lanigan's Brief in Support of Motion to Dismiss ("Lanigan Br.")). Defendant Lanigan's Motion to Dismiss attempts to make distinctions similar to those made by the DHS Defendants. He concedes that he was "involved in the 'system-wide' decision to move the residents from Kearny to EJSP," but then states that he only became commissioner one month before the move, so there "is nothing to suggest that the decision was actually his to make." (Lanigan Br. 11). He further argues that there are no facts alleged to suggest that he was "the moving force" behind the transfer and he is not involved in any treatment decisions. (*Id.* at 12). However, as discussed above, Judge Debevoise found, and the Third Circuit affirmed, that taking the allegations as a whole, the transfer decision and treatment disruptions are intertwined

---

[3] According to the SAC, "[d]espite many requests for information from Defendants Merrill Main, Adams and Ottino, Plaintiff Thomas has received no explanation for his placement in the South Unit, nor is there a medical- or treatment-based justification for restricting his treatment and progress by placing him there." (SAC ¶ 70).

[4] The Court notes that Defendant Mielke was not named in the FAC. However, the determinations and findings regarding the claims against Defendants Adams and Ottino apply with equal force to her.

and the allegations against Defendant Lanigan were sufficient. *Thomas*, 655 F. App'x at 85–86 ("[T]he pleadings focus upon disruptions in treatment occurring after Thomas and Nash were transferred from the Kearney facility to the East Jersey State Prison, inextricably intertwining the constitutional violation claims about treatment disruptions with policy decisions concerning the transfer"). For the reasons stated by Judge Debevoise and the Third Circuit, Defendant Lanigan's Motion to Dismiss on this ground is denied.

11. Defendant Lanigan also seeks dismissal of Plaintiffs' request for declaratory relief against him in his official capacity. (Lanigan Br. 13-15). He argues that a claim against him in his official capacity for declaratory relief is only permissible if it is prospective. (*Id.*). He alleges that the request for declaratory relief relates only to the transfer decision, which already occurred, and therefore cannot be prospective. (*Id.*). Plaintiffs state in their Opposition that they are "seeking prospective relief from Defendants in their official capacities: a declaration that Plaintiffs' continued involuntary commitment without adequate access to their prescribed level of mental health treatment violates the United States and New Jersey Constitutions, and an injunction as to all of the official-capacity Defendants requiring them to, inter alia, provide access to mental health treatment necessary to achieve meaningful progress toward release." (D.E. No. 59, Plaintiffs' Opposition 19, n.7).

12. According to the SAC, Defendant Lanigan is responsible for "determining all matters of DOC policy, formulating and issuing rules and regulations for DOC facilities, including the STU, and setting procedures and guidelines for and providing training to DOC staff." (SAC ¶ 7). Defendant Lanigan's argument once again circles back to the fact that the transfer decision and treatment disruption are all connected. Certainly, it is a reasonable reading of the SAC to find

that they are seeking prospective declaratory relief from all Defendants relating to the conditions at the STU and continued involuntary commitment. This includes Defendant Lanigan.

13. Finally, the DHS Defendants are seeking qualified immunity. (DHS Br. 9-11). Judge Debevoise and the Court of Appeals extensively examined whether these Defendants were entitled to qualified immunity based on the allegations in the FAC. As discussed many times above, these courts determined that they were not. Despite Defendants' focus on the additional facts provided by Plaintiffs in the SAC, this Court does not find that these courts' conclusions must be reconsidered. Therefore, for the reasons discussed at length by Judge Debevoise and the Third Circuit, as well as the reasons discussed herein, Defendants are not entitled to qualified immunity based on the facts alleged in the SAC.

14. For the reasons discussed in this Memorandum Opinion, Defendants' Motions to Dismiss (D.E. Nos. 54, 55) are denied. An appropriate Order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**